# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 13-60764

————

RONY ALEXANDER PAZ CALIX,

United States Court of Appeals
Fifth Circuit

**FILED**

April 28, 2015

Lyle W. Cayce
Clerk

Petitioner

v.

LORETTA LYNCH, U.S. ATTORNEY GENERAL,

Respondent

————

Petition for Review of an Order of the
Board of Immigration Appeals

————

Before REAVLEY, SMITH, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Rony Alexander Paz Calix seeks review of the Board of Immigration Appeals' ruling that he is ineligible for cancellation of removal under the "stop-time rule." The government argues that this court may not consider his claim because he failed to exhaust his administrative remedies. We conclude that we have jurisdiction over the claim. On the merits, we agree with the BIA's holding that Paz Calix is ineligible for cancellation of removal. We therefore DENY the petition for review.

No. 13-60764

FACTS AND PROCEDURAL BACKGROUND

Rony Alexander Paz Calix, a native and citizen of Honduras, entered the United States in December 1997 as a lawful permanent-resident alien. He was convicted in February 2001 for possession of marijuana and in July 2007 for possession of cocaine.

In October 2009, the Department of Homeland Security charged Paz Calix with deportability under the Immigration and Nationality Act ("INA") as an alien convicted of a controlled substance violation after admission into the United States. Paz Calix conceded removability and requested cancellation of removal under 8 U.S.C. § 1229b(a). The government moved to pretermit Paz Calix's application. The immigration judge ("IJ") granted the government's motion in June 2011, concluding, pursuant to the "stop-time rule" in Section 1229b(d)(1), that Paz Calix's 2001 marijuana offense halted his accrual of continuous residence in the United States short of the seven years required for cancellation of removal. In September 2011, the IJ ordered Paz Calix's removal to Honduras.

Paz Calix timely appealed to the Board of Immigration Appeals ("BIA"). In his brief, Paz Calix explained that he had been a lawful permanent resident since December 1997 and was not seeking admission to the United States. Therefore, he argued that the 2001 offense that would render him inadmissible under the stop-time rule had no effect on his eligibility for cancellation of removal. In September 2013, the BIA affirmed the IJ's order of removal.

Paz Calix timely filed a petition for review with this court. The government, in addition to contesting the substance of Paz Calix's claim, argues that this court may not reach the claim because Paz Calix did not adequately raise it before the BIA and therefore failed to exhaust his administrative remedies.

2

No. 13-60764

DISCUSSION

*I. Jurisdiction to Hear Paz Calix's Claims*

A court may not review a final order of the BIA unless the alien has exhausted all administrative remedies.   8 U.S.C. § 1252(d)(1).   Failure to exhaust administrative remedies is a jurisdictional bar. *Claudio v. Holder*, 601 F.3d 316, 318 (5th Cir. 2010).

Paz Calix argued both to the IJ and to the BIA that his 2001 conviction did not trigger the stop-time rule because he "was already admitted as a Lawful Permanent Resident on December 15, 1997, and he is not an arriving alien currently seeking admission into the United States."  He cited an unpublished BIA decision which held that a lawful permanent-resident alien in a situation analogous to Paz Calix's "is not regarded as seeking admission . . . ."  *In re Lara-Terrazas*, No. A36 587 673, 2006 WL 3922203, at *1 (BIA Dec. 11, 2006). The single member of the BIA who resolved Paz Calix's appeal did not mention *Lara-Terrazas* (though the IJ did), instead interpreting a later published BIA decision as holding that if an alien's crimes would render him inadmissible, continuous residence effectively ended even for a lawful permanent resident. *See In re Jurado-Delgado*, 24 I. & N. Dec. 29, 31 (BIA 2006).

Despite the specific language in Paz Calix's brief and the BIA's explicit rejection of his claim, the government argues that Paz Calix did not adequately present his claim and thus did not exhaust his administrative remedies regarding that claim.  The principal shortcoming, the government argues, is the "complete dearth of legal support" for his construction of the stop-time rule. As we discuss below, there is little authority for either side to cite on this precise question.  The *Lara-Terrazas* decision that Paz Calix did cite is one of the most relevant precedents supporting his claim.   The BIA understood the argument and considered it.  We see no failure to exhaust.

3

No. 13-60764

Similarly, appellate briefs must adequately present a legal argument by, among other things, providing citations to authorities. *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994). Our refusal to consider poorly briefed arguments derives from the appellate rule requiring an appellant's brief to contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ." FED. R. APP. P. 28(a)(8)(A); *see also L & A Contracting*, 17 F.3d at 113 & n.27. We conclude that no violation of this rule occurred. Paz Calix made his argument clearly, and cited one of the few cases relevant to the question at issue. A thin argument perhaps, but when the authority itself is thin, that may be sufficient. The briefing here suffices.

## II. Paz Calix's Eligibility for Cancellation of Removal

Courts generally cannot review final orders of removal, including the exercise of discretion to grant or deny relief under Section 1229b. *See* 8 U.S.C. § 1252(a)(2)(B)(i). Courts may, however, consider constitutional claims or questions of law raised in a petition for review. *See* § 1252(a)(2)(D). Accordingly, this court reviews *de novo* whether, as a matter of law, an offense invokes the stop-time rule under Section 1229b(d)(1). *Miresles-Zuniga v. Holder*, 743 F.3d 110, 112 (5th Cir. 2014).

The Attorney General may cancel the removal of a lawful permanent-resident alien if, among other factors not at issue here, the alien "has resided in the United States continuously for 7 years after having been admitted in any status . . . ." 8 U.S.C. § 1229b(a)(2). This requirement is qualified by the stop-time rule, which ends the accrual of continuous residence: "when the alien [commits] an offense referred to in section 1182(a)(2) of this title that renders the alien [(a)] inadmissible to the United States under section 1182(a)(2) of this

4

title or [(b)] removable[1] from the United States under section 1227(a)(2) or 1227(a)(4) of this title . . . ." § 1229b(d)(1)(B).

Paz Calix concedes that he committed an offense referred to under Section 1182(a)(2). The question is whether that offense "renders" him "inadmissible to the United States." If it does, then Paz Calix's continuous residence in the United States will span only from February 1997, when he entered the United States, until no later than January 2001, when he was arrested for possession of marijuana and was later convicted. As a result, he will fall short of the seven-year requirement in Section 1229b(a)(2) and will not be eligible for cancellation of removal. The question is difficult because the concept of inadmissibility is generally married to situations in which an alien is actually seeking admission to the United States. The government agrees that Paz Calix is not seeking admission.[2] It argues, though, that inadmissibility for purposes of the stop-time rule is distinct from inadmissibility in other contexts. That is, inadmissibility under the stop-time rule is merely a status conferred upon aliens by virtue of their having committed a Section 1182(a)(2) offense. The government asserts that if an alien seeking cancellation of removal has committed an offense that would make him or her inadmissible if actually seeking admission, that offense suffices to make the alien ineligible for cancellation of removal.

---

[1] Section 1227(a)(2) and (a)(4) use the term "deportable," not "removable."

[2] The definition section of the INA states that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission into the United States for purposes of the immigration laws . . . ." 8 U.S.C. § 1101(a)(13)(C). An exception to this rule arises when an alien "has committed an offense identified in section 1182(a)(2) of this title . . . ." § 1101(a)(13)(C)(v). This exception, however, applies only to lawful permanent-resident aliens who leave the country after committing a Section 1182(a)(2) offense and subsequently reenter or seek reentry without being readmitted. *See Vartelas v. Holder*, 132 S. Ct. 1479, 1485, 1488 (2012); *Cabral v. Holder*, 632 F.3d 886, 892 (5th Cir. 2011). The government does not claim that Paz Calix left the country.

No. 13-60764

Whether a lawful permanent-resident alien who is not seeking admission is barred from cancellation of removal for having been "rendered inadmissible to the United States" for purposes of the stop-time rule is a question of first impression for this court.[3]

In interpreting the stop-time rule, we consider "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). If so, we must "give effect to the unambiguously expressed intent of Congress." *Id.* at 843. When, instead, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* This approach "is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000).

### a. Chevron *Step One*

"A statute is ambiguous if it is susceptible of more than one accepted meaning." *United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 146 (5th Cir. 1996). Multiple accepted meanings do not exist merely because a statute's "authors did not have the forethought expressly to contradict any creative contortion that may later be constructed to expand or prune its scope." *Moore v. Hannon Food Serv., Inc.*, 317 F.3d 489, 497 (5th Cir. 2003). Thus, a court must

---

[3] This court disposed of a related question by concluding that a lawful permanent-resident alien was *removable* under the stop-time rule; we declined to address whether the alien could be regarded as *inadmissible* under the rule. *See Miresles-Zuniga*, 743 F.3d at 114 n.7. Here, Paz Calix had already accrued seven years of continuous residence by the time of his 2007 cocaine offense, which rendered him removable. In contrast, his 2001 marijuana offense rendered him inadmissible, but not removable.

6

determine whether "all but one of the meanings is ordinarily eliminated by context." *Deal v. United States*, 508 U.S. 129, 132-33 (1993). If, however, contextual clues do not reveal a single accepted meaning, "[i]t is eminently reasonable to conclude that [a statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands . . . ." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009); *see also U.S. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843 (2012).

In order to conduct this analysis, "we avail ourselves of the traditional means of statutory interpretation, which include the text itself, its history, and its purpose." *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 739 (5th Cir. 2005) (citation omitted). "[W]hen traditional methods of statutory construction fail to reveal a provision's meaning . . . we conclude that it is ambiguous." *United Servs. Auto. Ass'n*, 102 F.3d at 147.

A key phrase for us from Section 1229b(d)(1)(B) is "an offense . . . that renders the alien inadmissible . . . or removable . . . ." The word "renders" is not defined in the INA. The context in which the word is used does not offer clarity.[4] The ordinary meaning of the word is "to cause to be or become." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1054 (11th ed. 2003). This definition brings us no closer to answering the question at issue. It instead injects the equally vague question of whether aliens may be or become inadmissible to the United States if they are not seeking admission.

---

[4] Of potential relevance is the stop-time rule's use of the relative pronoun "that" instead of "which" to modify the clause "renders the alien inadmissible." This could indicate that the clause qualifies, rather than describes, the preceding clause "offense referred to in section 1182(a)(2)." *See* THEODORE M. BERNSTEIN, THE CAREFUL WRITER 444 (1965). If that is the case, offenses that "render[] the alien inadmissible" must be a subclass of, rather than equivalent to, "offense[s] referred to in section 1182(a)(2)." We do not rely on the distinction between restrictive and non-restrictive relative pronouns, however, because it is not sufficiently recognized as a grammatical rule. *See, e.g.*, ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 142-43 (2012).

No. 13-60764

Paz Calix argues that we should reject the government's interpretation because it violates the principle "that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992). If an offense "that renders the alien inadmissible to the United States under section 1182(a)(2)" is one "referred to in section 1182(a)(2)," then the "renders . . . inadmissible" language serves no purpose. Furthermore, if an offense referred to in Section 1182(a)(2) categorically rendered an alien inadmissible for purposes of the stop-time rule, then there would be no need to consider whether, in the alternative, the offense rendered the alien removable under Section 1227(a)(2) or (a)(4).

The government responds that the stop-time rule was one feature of a congressional overhaul of immigration statutes. Accordingly, the government reasons that it is understandable that certain superfluities appear in the statute. The government discusses a BIA decision characterizing the stop-time rule's reference to Section 1227(a)(4) as "surplusage" and suggesting Congress may have intended to reference Section 1227(a)(3) instead. *See In re Campos-Torres*, 22 I. & N. Dec. 1289, 1294-95 (BIA 2000) (en banc).[5] In that opinion, a majority of the en banc BIA also held that the stop-time rule's clear statement that the relevant offenses must be referred to in Section 1182(a)(2), even those that render an alien removable under Section 1227(a)(2) or (a)(4), could not be ignored as a drafting error. *Id.* at 1292-93. These oddities suggest that the interlocking concepts of inadmissibility, removability, and eligibility for relief from removal can be difficult to harmonize for both Congress and courts.

---

[5] For further insights into the difficulties of interpreting the stop-time rule and other pertinent provisions of the 1996 amendments to the INA, see Elwin Griffith, *Admission and Cancellation of Removal under the Immigration and Nationality Act*, 2005 MICH. ST. L. REV. 979, 1041-52 (2005).

No. 13-60764

In determining what to make of the surplusage argument, we broaden our perspective. The stop-time rule requires an alien to commit an offense listed in Section 1182(a)(2) that "renders the alien inadmissible . . . ." We should not, then, ignore the language of Section 1182(a)(2). If the alien has committed an offense listed there, does inadmissibility automatically result? It does not. Immigration authorities may suspect that an alien has committed an offense identified in Section 1182(a)(2), but such suspicions are not sufficient to make the alien inadmissible. Removal proceedings do not allow for a trial within a trial where, after the presentation of evidence, the immigration judge decides whether one of the relevant offenses has been committed. Instead, an offense under this subsection must be shown either by the alien's admitting the offense or by a conviction. *See* § 1182(a)(2)(A)(i). One reading, then, of the "renders the alien inadmissible" language is that the alien is not rendered inadmissible unless he has been convicted of or admitted committing the offense. Such a reading is a possible, but not the only, interpretation of what Congress meant. The language is ambiguous.

Additionally, we consider if the stop-time rule unambiguously resolves whether being rendered inadmissible matters if the alien is not seeking admission. Paz Calix relies on analysis in a BIA decision that the stop-time rule does not apply in that situation. *See Lara-Terrazas*, 2006 WL 3922203, at *1. Because the decision was issued by a single board member and has no precedential effect, we may not defer to its analysis under *Chevron*. *See Dhuka v. Holder*, 716 F.3d 149, 155-56 (5th Cir. 2013). We may, however, consider the persuasiveness of its reasoning in determining if the statute is ambiguous.

In *Lara-Terrazas*, the single member of the BIA discussed the INA's definition of "admission," which provides that a lawful permanent-resident alien may not be regarded as seeking admission except in certain narrow

9

circumstances not applicable here.  *See Lara-Terrazas*, 2006 WL 3922203, at *1 (citing 8 U.S.C. § 1101(a)(13)(C)).  That decision also observed that Section 1182(a)(2) applies to "aliens who are seeking admission into the United States."  *Id.*  It therefore concluded that the commission of an offense under Section 1182(a)(2) would halt continuous presence or residence only for aliens seeking admission.  *See id.*

By focusing exclusively on the general application of Section 1182(a)(2), the board member did not consider whether for purposes of the stop-time rule, Congress had given Section 1182(a)(2) a different effect.  Congress could have decided that any of the offenses identified in the stop-time rule would end an alien's continuous residence or presence no matter what the alien's immigration status was when later seeking cancellation of removal.  Our question depends as much on the language of the stop-time rule as on the language of the section on inadmissibility.  We see no clear answer.

The stop-time rule is ambiguous as to whether an offense that would make an individual inadmissible ends the continuous residence of an alien who is not seeking admission.  We examine the BIA's conclusions on that issue and also its interpretation of the ambiguous word "renders."

*b.* Chevron *Step Two*

When a statute is ambiguous, we defer to an agency's reasonable interpretation.  *Chevron*, 467 U.S. at 842.  "An agency's interpretation is permissible if it is reasonable.  The question of reasonableness is not whether the agency's interpretation is the only possible interpretation or whether it is the most reasonable, [but] merely whether it is reasonable *vel non*."  *ConocoPhillips Co. v. EPA*, 612 F.3d 822, 831 (5th Cir. 2010).  Interpretations established through adjudication warrant *Chevron* deference so long as they

were established prior to the case under consideration. *R&W Technical Servs. Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 165, 171 (5th Cir. 2000).

Our first concern is to understand the work that "renders" does in making time stop under this rule. In an en banc decision, the BIA addressed two interpretive questions that apply here. *See In re Perez*, 22 I. & N. Dec. 689, 693-94 (BIA 1999). First, the BIA decided whether continuous residence ends when an alien commits an offense or not until convicted of the offense. The BIA majority held that the commission of an offense terminates continuous residence. *See id.* Though the BIA was addressing deportation instead of inadmissibility, its interpretation applies to both. *See id.*

Second, the BIA held that an alien was not "rendered" deportable until convicted of the offense (he had not admitted to its commission):

> "[R]enders" . . . is a restrictive clause which modifies the word "offense" by limiting and defining the types of offenses which cut off the accrual of further time as of the date of their commission. Thus, it implicitly requires that the steps necessary to "render" an alien inadmissible or removable shall have occurred before the offense qualifies for section [1229b(d)(1)] purposes.

*Id.* at 693. The BIA stated that "the respondent was ultimately 'rendered' deportable under section [1227(a)(2)(B)(i)] by his conviction . . . . Hence, his conviction placed his offense within those specified in section [1229b(d)(1)] for purposes of terminating continuous residence." *Id.*

In a much earlier decision that *In re Perez* cites, the BIA had used "renders" in a similar manner. In that case, an alien was removed under an INA provision applicable to aliens who had been "convicted of a crime involving moral turpitude" and either sentenced to confinement or confined for a year or more. *See Matter of P,* 6 I. & N. Dec. 788, 789-90 (BIA 1955). The BIA explained that "[i]t takes the commission of the crime *plus* the conviction *and* the sentence to render [an alien] deportable under this section." *Id.* at 790.

The BIA echoed this language in a later opinion, stating that "it is the conviction, not the commission of the offense, that renders the alien deportable." *Matter of Lozada,* 19 I. & N. Dec. 637, 640 (BIA 1988).

These cases demonstrate that the BIA has at least since 1955 used "renders" to mean that something, such as a conviction, gives immigration consequence to the commission of an offense. That meaning could easily have shaped the stop-time rule, which was added to the INA in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") of 1996. *See Heaven v. Gonzales*, 473 F.3d 167, 171-72 (5th Cir. 2006).

The interpretations in *Perez*, *Lozada*, and *Matter of P* are reasonable. Under those interpretations, the "renders . . . inadmissible" language is not redundant. An alien first must commit an offense referred to in Section 1182(a)(2). The commission will end continuous residence if the offender is rendered inadmissible by something more, such as conviction or admitting to the offense, as specified in the applicable portion of Section 1182(a)(2).

Having accepted the BIA's interpretation of "renders . . . inadmissible," we next address the closely related question of whether an alien must be seeking admission in order for that language to apply. The government, as did the BIA, relies on a decision in which a lawful permanent-resident alien was charged with removal for having been convicted of two morally turpitudinous crimes. *See In re Jurado-Delgado*, 24 I & N. Dec. 29, 30 (BIA 2006). There the government argued that the alien did not qualify for cancellation of removal because both of the convictions triggered the stop-time rule. *Id.* The IJ held that those charges were irrelevant under the stop-time rule because "they were not the basis of a charge and finding of removability." *Id.* The BIA reversed. It held that an offense that "renders the alien inadmissible" was one that caused the alien to be "potentially removable if so charged." *Id.* at 31. Thus,

12

the BIA "conclude[d] that an alien need not actually be charged and found inadmissible or removable on the applicable ground in order for the criminal conduct in question to terminate continuous residence in this country." *Id.*[6] The Third Circuit upheld this interpretation. *See Jurado-Delgado v. U.S. Att'y Gen.,* 498 F. App'x 107 (3d Cir. 2009).

The BIA in *Jurado-Delgado* clearly answered one narrow question. It held that an alien could be charged with removal on one ground and be ineligible for cancellation of removal because of another ground. The opinion does not explicitly answer whether a lawful permanent resident who does not need to be admitted nonetheless has his period of continuous residence stopped by an offense rendering him inadmissible. The effect of the decision, though, was to deny eligibility for cancellation of removal based on inadmissibility even though the lawful permanent-resident alien was not seeking admission, rejecting by result if not reasoning the argument that Paz Calix makes here. Because we discover no holding to that effect, we find no grounds for deference under *Chevron* Step 2. An issue not discussed by an agency should not be seen as having implicitly been resolved in the way necessary to support the decision and the implication then be given deference.

Able judges in a sister circuit read the BIA's *Jurado-Delgado* opinion as actually resolving that a lawful permanent resident not seeking admission has his continuous residence stopped by an offense rendering aliens inadmissible. *See Ardon v. U.S. Att'y Gen.,* 449 F. App'x 116, 118 (3d Cir. 2011). As the

---

[6] The BIA noted that an alien does not even need to be "convicted of an offense under section 212(a)(2) of the Act in order for the 'stop-time' rule to apply. For example, the rule may be triggered by an alien's admission of acts constituting the essential elements of such an offense under section 212(a)(2)(A)(i)." *Jurado-Delgado,* 24 I & N. Dec. at 31. Just as no conviction was needed, "there is no reason to believe that Congress intended that an alien must have been charged with such an offense as a ground of inadmissibility or removability in order for the provision to stop the alien's accrual of continuous residence." *Id.*

remainder of our opinion shows, we reach the same result as did the Third Circuit. We just do not do so under *Chevron*.

The premise of *Chevron* is that a court has before it "an agency's construction of the statute which it administers" and must decide the relevance of that construction. *Chevron*, 467 U.S. at 842. A "court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Id.* at 843. In our case, administrative interpretations only partially resolve the issues. We must therefore impose our own construction on the stop-time rule as to ambiguous issues left in the interstices of the BIA's decisions. To do so, we examine a slightly different but analogous line of authorities.

The generic question for us is whether one section of the INA that cross-references another necessarily adopts the entirety of the second section – its limitations, qualifiers, or procedures. We considered such an issue when we interpreted a different provision of Section 1229b, the statute that contains the stop-time rule. *See Nino v. Holder,* 690 F.3d 691 (5th Cir. 2012). Instead of Section 1229b(d)(1), we interpreted Section 1229b(b). Part of that section allows cancellation of the removal of an alien who, among other restrictions, "has not been convicted of an offense under section . . . 1227(a)(2) . . . ." 8 U.S.C. § 1229b(b)(1)(C). The cross-referenced statute, among other offenses, makes any alien who "is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission," subject to deportation. § 1227(a)(2)(A)(i). Nino argued that because she had not committed the disqualifying offense within five years of admission, she was eligible for cancellation of removal. *Nino*, 690 F.3d at 697. We disagreed. Cancellation of removal under Section 1229b(b)(1)(C) may be available if the alien "has not been convicted of an offense under" the cross-referenced sections. We

14

concluded that Section 1227(a)(2), which had the five-year requirement, did "not provide the authority for the conviction. It provides the authority for the deportation. An alien will never be convicted under any part of Section 1227." *Id.* We found no ambiguity in the statute and held that the five-year limitation was inapplicable:

> We conclude that Section 1229b(b)(1)(C), without ambiguity, references Section 1227(a)(2) in order to identify the kinds of offenses that will make an alien ineligible for cancellation of removal. For purposes of that ineligibility, it does not matter when the offense occurred in relation to the alien's admission.

*Id.* at 697-98.

In *Nino,* we discussed the stop-time rule language as a contrast. As we well know from the discussion so far in the current opinion, the stop-time rule (which was not relevant in *Nino* other than for the contrast it allowed) goes beyond just referring to convictions of offenses under another section of the INA. We stated in *Nino* that the stop-time rule "provides that the offense must have been committed *and* have rendered the alien inadmissible or removable.'" *Id.* at 697. Such specificity was absent in the cross-reference relevant in *Nino,* supporting the conclusion that the two different cross-references – one just to offenses under another section, and the second to offenses that render an alien inadmissible or removable – did not operate the same. *Id.*

Other circuits and the BIA have reached similar conclusions about the section we interpreted in *Nino.* Those opinions also contrasted the language of the stop-time rule. *See, e.g., Gonzalez-Gonzalez v. Ashcroft,* 390 F.3d 649, 650 (9th Cir. 2004). The BIA used a helpful phrase when it labeled the additional requirements of the cross-referenced Sections 1182(a)(2) and 1227(a)(2) – *e.g.,* that a relevant crime was committed within a certain time period, or that it is not a "petty offense" –   as the "immigration-related

provisions[.]" *Matter of Cortez*, 25 I. & N. Dec. 301, 308 (BIA 2010).[7]   Some courts, though, may have gone further than necessary to contrast the manner in which the stop-time rule is written with the phrasing of the statute actually at issue in their case.  For example, the Ninth Circuit stated that, had Section 1229b(b)(1)(C) been written using language comparable to what is in the stop-time rule, it would "tend to support Gonzalez-Gonzalez's interpretation" that all of the limitations of the other statute applied. *Gonzalez-Gonzalez,* 390 F.3d at 652-53.  Logically, there are three categories of potential incorporation of immigration-related provisions – not just all or none, but all, some, or none.  As we will explain, the stop-time rule is best understood as an incorporation of some of the immigration-related provisions.

As was evident in our *Nino* analysis, the language of each INA cross-reference must be examined carefully.  As to the stop-time rule's language, we have analyzed here the effect of the word "renders."  Not only must the alien have committed an offense under the cross-referenced statute, but the commission must have been followed by something else that made the alien inadmissible or removable.  At least that much of the immigration-related provisions of the referenced statute was adopted.  Is more than that incorporated in the stop-time rule?

To answer, we start by walking through the statutory steps relevant to Paz Calix's possible removal.  His removal was based on a 2007 cocaine offense.  He conceded he was removable for that offense under Section 1227(a)(2)(B)(i).  He sought cancellation of removal, which among other matters requires that

---

[7] The Fourth and Seventh Circuits resolved the same issues by deferring to the BIA's interpretation of Section 1229b(b)(1)(C) under *Chevron* Step 2. *See Hernandez v. Holder,* --- F.3d ---, 2015 WL 1638917, at \*5 (4th Cir. 2015); *Coyomani-Cielo v. Holder*, 758 F.3d 908, 910-11 (7th Cir. 2014).

he have resided continuously in this country for seven years after being admitted in any status. § 1229b(a)(2). Continuous residence stops under the provision that we have been discussing. § 1229b(d)(1)(B). The stop-time rule by its own terms applies only when an alien commits an offense under Section 1182(a)(2), which are the offenses that make an alien inadmissible. Paz Calix's 2001 offense for possession of marijuana is one of those offenses.

Time also is stopped if a Section 1182(a)(2) offense makes an alien removable under Section 1227(a)(2). *Id.* That language is confusing because each subpart of Section 1182(a)(2) closes by saying an alien who committed that particular offense is inadmissible. Removability seems a redundancy. As the BIA explained, this and other uncertainties could have been removed by fairly simple rewording of the stop-time rule, but Congress chose this wording. *In re Campos-Torres*, 22 I. & N. Dec. at 1293. Logically at least, section 1227(a)(2) could at times be important because there are exceptions in Section 1182(a)(2). For example, a crime involving moral turpitude will not bar admission if, among other conditions, it was committed before the offender was 18 years old. § 1182(a)(2)(A)(ii). If a Section 1182(a)(2) exception is not also an exception for the same offense under Section 1227(a)(2), an alien admissible despite the offense might still be removable due to the offense.

Regardless of whether any examples of such distinctions exist, the stop-time rule blends offenses that make aliens inadmissible with those making them deportable or removable. Any offense that triggers the stop-time rule will halt the period of continuous residence for those who are seeking admission and those who have already been admitted. Congress used the offenses in Section 1182(a)(2) that establish inadmissibility as the basis, subject to the "renders" language, for stopping the running of the continuous period needed for anyone who seeks cancellation of removal.

When Paz Calix committed an offense rendering him inadmissible, it could not then be known whether in later removal proceedings he would need to seek admission.  Lawful permanent-resident aliens do at times need to be admitted, such as when they have abandoned that status or have been absent for more than 180 days.  *See* § 1101(a)(13)(C).  Paz Calix's continuous residence ended in 2001 when he committed an offense that rendered him inadmissible.  Using the language of *Jurado-Delgado*, he became potentially removable if properly charged.  *See* 24 I. & N. Dec. at 31.

We conclude that the stop-time rule borrows only some of the immigration-related provisions of the cross-referenced Sections 1182(a)(2) and 1227(a)(2).  To be clear, we are not holding that a section of the INA must restate all the terms in a cross-referenced section before those terms are relevant.  Each cross-reference must be examined carefully.  Unlike in *Nino,* we have found this cross-reference ambiguous.  An interpretation consistent with *Nino* incorporates only the provisions that explain what further must happen before there is an immigration-related consequence to the commission of an offense.  We observed above that the BIA in *Jurado-Delgado* reached this result without explicitly analyzing the issue.   We do not change course and now give deference to something at best only implied in that decision, but our conclusion is consistent with that BIA decision.

Paz Calix's offense of possession of marijuana is referred to in Section 1182(a)(2).  Once he was convicted of the offense, he was rendered inadmissible to the United States.  His accrual of continuous residence was halted as of the date he committed that offense.  Because he has not resided in the United States continuously for seven years, he is ineligible for cancellation of removal.

Petition DENIED.