**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1427
_____

WASEEM AHSAN KHAN,
                                          Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA,
                                          Respondent
_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
[Agency No. 047-698-921]
Immigration Judge: Daniel A. Morris
_____

Argued July 8, 2020

Before: KRAUSE, MATEY, and RENDELL *Circuit Judges*

(Opinion Filed: November 3, 2020)

Eric M. Mark **[ARGUED]**
201 Washington Street
Newark, NJ 07102
    *Attorney for Petitioner*

Surell Brady
United States Department of Justice
Office of Immigration Litigation
Room 5044
P.O. Box 878
Washington, DC 20044

Sunah Lee **[ARGUED]**
Andrew N. O'Malley
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Washington, DC 20044
    *Attorneys for Respondent*

David A. Isaacson
Cyrus D. Mehta & Partners
One Battery Park Plaza
9th Floor
New York, NY 10004
    *Attorney for Amici Curiae American Immigration Lawyers Association, National Immigration Project of the National Lawyers Guild, and Immigrant Defense Project*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge.*

The decision of some states to decriminalize the possession of personal-use quantities of marijuana has had collateral consequences well beyond the vacatur of thousands of convictions. We deal today with a consequence for noncitizens whose commission of this type of offense, under applicable immigration laws, would normally "stop time" on the accrual of the years of continuous residence required to be eligible for cancellation of removal. *See* 8 U.S.C. §§ 1229b(a)(2), 1229b(d)(1). The question is whether that "stop-time rule" still applies if, post-conviction, the offense has been decriminalized and the conviction vacated as a result. Because we hold that a vacatur in this context does not affect the operation of the stop-time rule, we agree with the Board of Immigration Appeals that Petitioner in this case did not satisfy the continuous-residence requirement for eligibility for cancellation of removal, and we will deny his petition for review.

## I. Background

Petitioner Waseem Ahsan Khan was admitted to the United States as a legal permanent resident (LPR) in 2000 and pleaded guilty to possession of less than one-half ounce of marijuana, in violation of Conn. Gen. Stat. § 21a-279(c), in 2006. He was not subject to removal for that conviction because it was "a single offense involving possession for one's own use of 30 grams or less of marijuana," 8 U.S.C. § 1227(a)(2)(B)(i), but that was not his only tangle with the Connecticut criminal code.

3

In 2010, Khan was convicted for two counts of larceny in the third degree under Conn. Gen. Stat. § 53a-124, and those offenses did subject him to removal as "convict[ions] of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). He was eventually served with a Notice to Appear in 2017, leading to the order of removal that is the subject of this petition.

At each step along the way, Khan sought cancellation of removal, a discretionary form of relief that permits an otherwise removable noncitizen to remain in the country.[1] *See Torres v. Lynch*, 136 S. Ct. 1619, 1623 (2016). As relevant to this appeal, he acknowledged that to be eligible for this relief, he must "ha[ve] resided in the United States continuously for 7 years after having been admitted" as a LPR. 8 U.S.C. § 1229b(a)(2). He also did not dispute that he could not meet that criterion if the "stop-time rule"—which stops the accrual of continuous residence when the noncitizen "has committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2)," *id.* at § 1229b(d)(1)—applies to the marijuana offense he committed six years after being admitted. But, he argued, the rule did not apply to him because Connecticut later decriminalized the underlying offense, *see* 2011 Conn. Acts No. 11-71 (Reg. Sess.), and he had applied for and been

---

[1] In the course of his removal proceedings, Khan also contested removability and sought various other forms of relief, but we need not address those rulings as they are not challenged on appeal.

granted a vacatur of that conviction,[2] *see* Conn. Gen. Stat. § 54-142d.

The Immigration Judge (IJ) disagreed on the ground that the vacatur was due to a "post-conviction event[]," rather than "on the basis of a procedural or substantive defect in the underlying proceeding[]," and therefore, pursuant to *In re Pickering*, 23 I. & N. Dec. 621 (BIA 2003), the conviction continued to carry immigration consequences. A.R. 261. The Board of Immigration Appeals (BIA) adopted the IJ's reasoning and affirmed, reiterating that because "[t]he destruction of [Khan's] conviction record was not based on any procedural or substantive defect in the conviction itself, but rather on subsequent events," his continuous-residence period terminated when he "committed his drug possession offense." App. 7.

Khan timely petitioned for review of the BIA's conclusion that his since-vacated conviction triggered the stop-time rule.[3]

---

[2] For simplicity, we refer to the destruction of Khan's conviction record under Conn. Gen. Stat. § 54-142d as a vacatur because this case does not require us to parse any differences there may be between expungement and vacatur, terms which we have noted "appear variously in . . . BIA opinions[] as synonymous." *Pinho v. Gonzales*, 432 F.3d 193, 206 n.15 (3d Cir. 2005).

[3] In supplemental briefing, the parties addressed a potential threshold question—whether the stop-time rule, which is triggered by "an offense referred to in section

## II. Jurisdiction and Standard of Review

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, and we have jurisdiction under 8 U.S.C. § 1252(a). Although we lack jurisdiction over the "discretionary aspects of the denial of cancellation of removal," *Singh v. Att'y Gen.*, 807 F.3d 547, 549 n.3 (3d Cir. 2015) (citing 8 U.S.C. § 1252(a)(2)(B)(i)), we retain jurisdiction over determinations regarding statutory eligibility, *see* 8 U.S.C. § 1252(a)(2)(D), including "[s]atisfaction of the continuous residency requirement," *Singh*, 807 F.3d at 549 n.3. We review the BIA's legal determination of ineligibility *de novo* and any factual findings for substantial evidence, *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010), and it is the noncitizen's burden to demonstrate eligibility for cancellation of removal, *see Singh*, 807 F.3d at 550.

## III. Discussion

On appeal, Khan again contends that he "has resided in the United States continuously for 7 years after having been admitted in any status," 8 U.S.C. § 1229b(a)(2), because his

1182(a)(2)" that renders the noncitizen either "inadmissible" or "removable," requires that a LPR, who has already been "admitted" in that status, be rendered removable. 8 U.S.C. § 1229b(d)(1). Because Khan's marijuana offense could not have rendered him removable, *see* 8 U.S.C. § 1227(a)(2)(B)(i), only inadmissible, *see* § 1182(a)(2)(A)(i)(II), we held this case *c.a.v.* for the Supreme Court's resolution of that question in *Barton v. Barr*, 140 S. Ct. 1442 (2020), which held LPRs may be rendered inadmissible for purposes of the stop-time rule, *id.* at 1450, and which we discuss in further detail below.

6

2006 marijuana offense—the inadmissibility offense that would otherwise trigger the stop-time rule—was decriminalized and his conviction vacated. We first discuss the normal operation of the stop-time rule and then turn to the effect of a vacatur resulting from the offense's decriminalization.

## A.     The Normal Operation of the Stop-Time Rule

As with any question of statutory interpretation, "we must begin with the statutory text," *A.A. v. Att'y Gen.*, 973 F.3d 171, 180 (3d Cir. 2020) (citation omitted), and because we "presume[] that Congress expresse[d] its intent through the ordinary meaning of its language," we start with "an examination of the plain language of the statute," *id.* (first and second alterations in original) (internal quotation marks and citation omitted). In particular, courts "normally interpret[] a statute in accord with the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1738 (2020).

In relevant part, the provision embodying the stop-time rule provides that a LPR's continuous residence stops accruing if and when the LPR "has committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2)."[4]     8 U.S.C.

---

[4] In full, the statute provides that the continuous-residence period terminates:

> (A) . . . when the alien is served a notice to appear under section 1229(a) of this title, or
> (B) when the alien has committed an offense

§ 1229b(d)(1). Section 1182(a)(2), in turn, "renders inadmissible" any noncitizen who is "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (I) a crime involving moral turpitude . . . , or (II) a violation of . . . any law or regulation . . . relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1182(a)(2)(A)(i). It is undisputed that the marijuana offense to which Khan pleaded guilty met these criteria at the time and would have prevented Khan from having accrued the requisite seven years' continuous residence in the normal course. But in Khan's case, the law later changed: His offense of conviction is no longer a crime, so his conviction has been vacated. The question for us is whether, under these changed circumstances, he should still

referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1). Khan was served a notice to appear well after his seven years' continuous residence would have elapsed, so this case concerns only whether Khan committed a § 1182(a)(2) offense that renders him "inadmissible . . . or removable." *Id.* While we discuss here only the inadmissibility prong as relevant to Khan, our analysis pertains no less to the removability prong. *See Barton*, 140 S. Ct. at 1453 (explaining that "an offense that would render the noncitizen deportable under § 1227(a)(2) would also render the noncitizen inadmissible under § 1182(a)(2)").

be considered to "ha[ve] committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible . . . under section 1182(a)(2)."  8 U.S.C. § 1229b(d)(1).  And the answer depends on what is required by this statutory text.

By its terms, the stop-time rule is susceptible to two readings.  One is that the LPR previously committed one of the offenses specified in § 1182(a)(2), with the clause "that renders the alien inadmissible . . . under section 1182(a)(2)" serving merely to describe the significance of "an offense [being] referred to in section 1182(a)(2)."  The other is that the rule incorporates two distinct requirements:  (1) the LPR must have previously committed one of the offenses specified in § 1182(a)(2), and (2) the LPR's conviction of or admission to the offense "renders [him] inadmissible."  But of the two possible readings, only the latter comports with the statutory text and finds support in precedent.

As a textual matter, this second reading is proper for three reasons.  First, Congress's use of different verb tenses in each of the clauses—present-perfect in "has committed" and present in "renders"—reflects its intent for the two clauses to define separate requirements.  *See United States v. Wilson*, 503 U.S. 329, 333 (1992); *Santos-Reyes v. Att'y Gen.*, 660 F.3d 196, 199 (3d Cir. 2011).  Second, "[w]ords are to be given the meaning that proper grammar and usage would assign them," *United States v. Johnman*, 948 F.3d 612, 618 (3d Cir. 2020) (alteration in original) (quoting *Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019)), and though not so well-recognized as to rise to the level of a grammatical canon, the word "that" prefacing the second clause generally serves as a restrictive pronoun introducing necessary, additional information—in contrast to "which," a non-restrictive pronoun generally prefacing only

9

clarifying information, *see* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 142–43 (2012); *see Calix v. Lynch*, 784 F.3d 1000, 1005–06 n.4 (5th Cir. 2015). Finally, it is a "cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute," *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017) (internal quotation marks and citation omitted), but the first reading would make the clause "that renders . . . inadmissible" entirely superfluous, while the second reading "adhere[s] to the statutory text, which differentiates between the two [requirements]," *Nasrallah v. Barr*, 140 S. Ct. 1683, 1693 (2020), and thus gives distinct purpose to the "renders . . . inadmissible" clause.

It is not surprising, then, that even before the Supreme Court weighed in, our sister circuits and the BIA had adopted the second reading and held that the clause "that renders the alien inadmissible . . . under section 1182(a)(2)" in fact "qualifies, rather than describes, the preceding clause," *Calix*, 784 F.3d at 1005 n.4, and thus "limit[s] . . . the types of offenses which cut off the accrual of further time" to those for which the petitioner has been "rendered inadmissible—by a conviction, admission of the criminal conduct, or through some other means," *Heredia v. Sessions*, 865 F.3d 60, 69–70 (2d Cir. 2017) (quoting *In re Perez*, 22 I. & N. Dec. 689, 693 (BIA 1999)). And *Barton v. Barr* last term solidified that view. 140 S. Ct. 1442 (2020).

There, the Supreme Court had occasion to consider the meaning of the stop-time rule in connection with a different question: whether a LPR—who is already considered "admitted" under the immigration code—can still trigger the stop-time rule by committing an offense that renders him

10

inadmissible, or only by committing an offense that renders him removable. *See id.* at 1447–48. It concluded LPRs remained subject to the stop-time rule for inadmissibility offenses, *see id.* at 1450–51, but as relevant for our purposes, the Court also observed that the stop-time rule has two distinct requirements:

> *First*, cancellation of removal is precluded if a noncitizen *committed* a § 1182(a)(2) offense during the initial seven years of residence, even if . . . the *conviction* occurred after the seven years elapsed. . . . *Second*, the text of the law requires that the noncitizen be rendered "inadmissible" as a result of the offense. . . . [And] "while only commission is required at step one, conviction (or admission) is required at step two."

*Barton*, 140 S. Ct. at 1449–50 (quoting *Barton v. Att'y Gen.*, 904 F.3d 1294, 1301 (11th Cir. 2018)).

In sum, based on both text and precedent, the stop-time inquiry involves two questions: (1) Did the Petitioner commit one of the offenses identified in § 1182(a)(2) before accruing seven years' continuous residence, and (2) was the Petitioner rendered inadmissible under § 1182(a)(2) as a result of that offense? *Id.*; *see also Barton*, 904 F.3d at 1300, *aff'd*, *Barton*, 140 S. Ct. 1442 (describing the two steps); *Nguyen v. Sessions*, 901 F.3d 1093, 1096 (9th Cir. 2018), *abrogated on other grounds by Barton*, 140 S. Ct. 1442 (same); *Heredia*, 865 F.3d at 67 (same); *Calix*, 784 F.3d at 1008 (same). As those questions guide our analysis concerning Khan, we consider next whether the decriminalization of his offense and the

11

resulting vacatur of his conviction change either of the answers.

B.     The Stop-Time Rule Applies to a Decriminalized Offense

For the reasons discussed below, we conclude that once both requirements for the application of the stop-time rule were satisfied, the subsequent vacatur of Khan's conviction did not remove him from the rule's ambit.

1.     *Vacatur Has No Effect on When an Offense was "Committed"*

For the first requirement, our answer is straightforward: The text of the stop-time rule speaks not to the existence of a conviction, but to whether the noncitizen "*committed* an offense referred to in section 1182(a)(2)."   8 U.S.C. § 1229b(d)(1) (emphasis added).   Congress's choice of "commission" over "conviction" is significant, for the plain meaning of commit is "to carry into action deliberately: perpetrate," *Commit*, Merriam-Webster's Collegiate Dictionary (10th ed. 1995) (capitalization altered), or to "perform (convicted of *committing* crimes against the state)," *Commit*, Webster's Third New International Dictionary (1993) (capitalization altered).  *See also Commit*, American Heritage Dictionary (3d ed. 1992) (To "perform, or perpetrate: *commit a murder*.").   The "commi[ssion] [of] an offense," in other words, "focus[es] upon the subject's conduct," *Santos-Reyes*, 660 F.3d at 198–99, and is properly understood to connote "historical events," *Doe v. Att'y Gen.*, 659 F.3d 266, 271 (3d Cir. 2011).

With that understanding, the first clause is satisfied when the conduct itself "occur[s] on a particular date before the end of the seventh year of continuous residence, or [the] conduct . . . runs up to the date when the seventh year of residency ends," regardless of "when the subject is criminally charged for the conduct" or is convicted of it. *Santos-Reyes*, 660 F.3d at 199. That understanding accords with *Barton*, where the Supreme Court observed that a LPR who committed an offense before meeting the continuous-residence requirement would be ineligible for cancellation "even if . . . the conviction occurred after the seven years elapsed." 140 S. Ct. at 1449. It is also consistent with the way the Courts of Appeals and the BIA have discussed this requirement. *See Briseno-Flores v. Att'y Gen.*, 492 F.3d 226, 229 (3d Cir. 2007) ("[T]he commission of [an inadmissibility offense] effectively stops the time which counts toward the calculation of . . . continuous [residence]."); *see also Heredia*, 865 F.3d at 70–71; *Calix*, 784 F.3d at 1012; *In re Perez*, 22 I. & N. Dec. at 693–94.

In short, the stop-time rule's requirement that a noncitizen "has committed an offense referred to in section 1182(a)(2)," 8 U.S.C. § 1229b(d)(1), pegs the date to the offense conduct—a matter of historical fact that is unaltered by the noncitizen's conviction, much less by any vacatur of that conviction.

2. *Vacatur Due to Decriminalization of an Offense Has No Effect on Whether a Noncitizen is Rendered Inadmissible*

For the second requirement, the focus shifts from when the noncitizen committed the inadmissibility offense to whether the offense "render[s] the [noncitizen] inadmissible to

13

the United States under section 1182(a)(2)," 8 U.S.C. § 1229b(d)(1), meaning whether he was "convicted of, or . . . admits having committed, or . . . admits committing acts which constitute the essential elements of"[5] the inadmissibility offense at issue, 8 U.S.C. § 1182(a)(2)(A)(i). Where, as here, the agency has determined inadmissibility is based on the noncitizen's "conviction," rather than "admission,"[6] we

---

[5] This statutory language predates and remains consistent with the general definition of "conviction" in the Immigration and Nationality Act:

> [A] formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A). Both this definition and the stop-time rule were introduced as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

[6] Notwithstanding Khan's guilty plea and admissions at his plea colloquy, the IJ and BIA focused on Khan's "conviction," not "admissions." Because we may affirm only on a basis the BIA considered, *see I.N.S. v. Orlando Ventura*,

14

consider whether a subsequent vacatur of that conviction negates that consequence.

As a general matter, the answer is no. The immigration consequences of a criminal conviction are typically fixed at the time of conviction and not altered by post-conviction developments in the law.[7] *See, e.g.*, *Vartelas v. Holder*, 566 U.S. 257, 261 (2012) (holding that the collateral effects of a noncitizen's conviction were determined "by the legal regime in force at the time of his conviction"), *Martinez v. Att'y Gen.*,

---

537 U.S. 12, 16 (2002), we review the issue presented as involving only a "conviction" and will not consider whether Khan's guilty plea renders him inadmissible for being a noncitizen "who admits having committed, or who admits committing acts which constitute the essential elements of" an inadmissibility offense. 8 U.S.C. § 1182(a)(2)(A)(i). Neither will we consider any inadmissibility exception that Khan did not raise before the BIA, such as a waiver for "a single offense of simple possession of 30 grams or less of marijuana" under § 1182(h). *See Rachak v. Att'y Gen.*, 734 F.3d 214, 218 (3d Cir. 2013); *see also Heredia*, 865 F.3d at 67 n.8 (noting that in defining inadmissibility, § 1182 also "includes criteria for various types of relief from inadmissibility").

[7] As federal law governs immigration matters, it is federal law that prescribes what effect, if any, a state's repeal or amendment of its criminal laws has on immigration proceedings. *See Acosta v. Ashcroft*, 341 F.3d 218, 223 (3d Cir. 2003) (noting that a state legislature "obviously cannot dictate how the term 'conviction' is to be construed under federal law").

906 F.3d 281, 287 (3d Cir. 2018) (holding that we "compare the [controlled substances] schedules at the time of conviction" and rejecting petitioner's argument that his conviction did not trigger immigration consequences because it was not a categorical match with the current schedule (citing *Mellouli v. Lynch*, 575 U.S. 798, --, 135 S. Ct. 1980, 1984 (2015)); *Doe v. Sessions*, 886 F.3d 203, 210 (2d Cir. 2018) (same); *In re Velasquez-Rios*, 27 I. & N. Dec. 470, 472 (BIA 2018) (describing the analysis of eligibility for cancellation of removal in connection with a conviction for a crime involving moral turpitude as a "backward-looking inquiry into the maximum possible sentence the alien could have received for his offense at the time of his conviction" (emphasis omitted)).

According to Khan, however, a vacatur turns that general rule on its head so that, except in the narrow circumstance where a vacatur was granted on the basis of rehabilitation or immigration hardship, no vacated conviction carries immigration consequences. Khan relies for this proposition on *In re Pickering*, where the BIA recognized "a significant distinction between convictions vacated on the basis of a procedural or substantive defect in the underlying proceedings and those vacated because of post-conviction events, such as rehabilitation or immigration hardships," holding that only in the latter case does "the respondent remain[] 'convicted' for immigration purposes."[8]  23 I. & N.

_____

[8] Khan does not seriously contend that his conviction was "vacated on the basis of a procedural or substantive defect," *Pickering*, 23 I. & N. Dec. at 624, in his underlying criminal case, nor could he.  Although he cited the Due Process Clause of the Fifth and Fourteenth Amendments of the United

16

Dec. 621, 624 (BIA 2003). He also points to our opinion in *Pinho v. Gonzales*, according *Chevron* deference to *Pickering* and concluding, in the analogous context of assessing eligibility for adjustment of status under 8 U.S.C. § 1255,[9] that "substantive vacaturs," but not "rehabilitative vacaturs," render the noncitizen "no longer [] 'convicted' for immigration purposes." 432 F.3d 193, 209–10 (3d Cir. 2005) (applying *Pickering* to hold that a conviction vacated due to ineffective

States Constitution and provisions of the Connecticut Constitution in his petition for destruction of record, the BIA and this Court consider in the first instance whether "the order explains the court's reasons for vacating the conviction." *Pinho v. Gonzales*, 432 F.3d 193, 215 (3d Cir. 2005). Only if "the order does not give a clear statement of reasons," is it permissible to look at "the record before the court when the order was issued," *id.*, and Khan's order, which states "the Petition for Destruction of Record of Decriminalized Offense is GRANTED," App. 9, reflects that his vacatur was based not on any substantive defect in the criminal proceeding, but on the state legislature's policy decision to decriminalize an offense. *See Prado v. Barr*, 949 F.3d 438, 442 (9th Cir. 2020) (observing that a state's reclassification of and reduction of penalties for certain marijuana convictions did not reveal "a 'substantive' flaw in [those] conviction[s]").

[9] As *Barton* observed, "Congress . . . made th[e] status—inadmissibility because of conviction or other proof of commission of § 1182(a)(2) offenses—relevant in several statutory contexts," including "adjustment to permanent resident status." 140 S. Ct. at 1452 (citing 8 U.S.C. § 1255(a), (*l*)(2)).

assistance of counsel reflected a defect in the underlying proceeding and therefore did not render the noncitizen ineligible for adjustment of status to permanent resident); *see Rodriguez v. Att'y Gen.*, 844 F.3d 392, 397–98 (3d Cir. 2016) (same); *see also Andrade-Zamora v. Lynch*, 814 F.3d 945, 949–50 (8th Cir. 2016) (applying *Pickering* in stop-time context); *Saleh v. Gonzales*, 495 F.3d 17, 25 (2d Cir. 2007) (same).

Khan is simply mistaken in his reading of *Pickering*. The BIA's holding was not that only vacaturs based on "rehabilitation or immigration hardships" continue to function as convictions under the immigration code. To the contrary, the agency identified those situations as illustrative, not exhaustive, examples of the broad category of cases in which "a court vacates a conviction for reasons unrelated to the merits of the underlying criminal proceedings, [and] the [noncitizen] remains 'convicted' for immigration purposes." *Pickering*, 23 I. & N. Dec. at 624; *see Bragdon v. Abbott*, 524 U.S. 624, 639 (1998) (noting that "use of the term 'such as' confirms, [a] list is illustrative, not exhaustive"). In effect, then, Khan has the BIA's position backwards: Under *Pickering*, only if a conviction is vacated "based on a defect in the underlying criminal proceeding[]," does it cease to function as a "conviction" for immigration purposes." 23 I. & N. Dec. at 624; *see also Pinho*, 432 F.3d at 207–09.

In sum, the vacatur of Khan's conviction for an inadmissibility offense does not relieve him of the effects of the stop-time rule because it does not alter the historical fact that he committed the offense or that the offense "renders [him] inadmissible," 8 U.S.C. § 1229b(d)(1), as a consequence of his conviction. We therefore agree with the BIA that Khan's

"period of continuous residence ended when he committed his drug possession offense," App. 7., and because he had not yet accrued the requisite seven years' continuous residence, Khan is ineligible for cancellation of removal.

## IV.     Conclusion

For the foregoing reasons, we will deny the petition for review.