## In re Ignacio CAMPOS-TORRES, Respondent

### File A91 089 115 - Chicago

*Decided March 21, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Pursuant to section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(d)(1) (Supp. II 1996), an offense must be one "referred to in section 212(a)(2)" of the Act, 8 U.S.C. § 1182(a)(2) (1994 & Supp. II 1996), to terminate the period of continuous residence or continuous physical presence required for cancellation of removal.

A firearms offense that renders an alien removable under section 237(a)(2)(C) of the Act, 8 U.S.C. § 1227(a)(2)(C) (Supp. II 1996), is not one "referred to in section 212(a)(2)" and thus does not stop the further accrual of continuous residence or continuous physical presence for purposes of establishing eligibility for cancellation of removal.

Lisa J. Palumbo, Esquire, Chicago, Illinois, for respondent

Seth B. Fitter, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; VACCA, HOLMES, HURWITZ, VILLAGELIU, FILPPU, ROSENBERG, MATHON, GUENDELSBERGER, MOSCATO, and MILLER, Board Members. Concurring Opinion: GRANT, Board Member. Dissenting Opinion: COLE, Board Member, joined by HEILMAN and JONES, Board Members.

HURWITZ, Board Member:

We have jurisdiction over this timely appeal pursuant to 8 C.F.R. § 3.1(b) (1999). The respondent has appealed an Immigration Judge's February 12, 1998, decision finding him ineligible for cancellation of removal pursuant to section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (Supp. II 1996), because his commission of a firearms offense terminated his residence in the United States prior to the attainment of the statutorily required 7 years of continuous residence. There is no issue on appeal regarding the respondent's removability pursuant to section 237(a)(2)(C) of the Act, 8 U.S.C. § 1227(a)(2)(C) (Supp. II 1996),

based on his conviction for a firearms violation.

We find that the respondent's firearms offense did not cut off his continuous residence in the United States and that he is therefore eligible to apply for cancellation of removal. Accordingly, we will sustain the appeal and remand the record to the Immigration Judge to allow the respondent to apply for that relief.

## I. ISSUE PRESENTED

The issue in this case is whether, under the rule stated in section 240A(d)(1) of the Act, an offense that is not "referred to in section 212(a)(2)" of the Act, 8 U.S.C. § 1182(a)(2) (1994 & Supp. II 1996), will stop the further accrual of continuous residence in the United States, which is required to establish eligibility for cancellation of removal.

## II. FACTS

The respondent, a native and citizen of Mexico, was admitted to the United States as a temporary resident on May 4, 1988, and adjusted his status to that of a lawful permanent resident on December 13, 1990. It is uncontested that on September 23, 1993, the respondent was convicted in the Circuit Court of Cook County, Illinois, of a single offense of unlawful use of a weapon, in violation of chapter 38, section 24-1(a)(7) of the Illinois Compiled Statutes Annotated.[1] The respondent was sentenced to 18 months' probation. On June 25, 1997, the Immigration and Naturalization Service issued and served a Notice to Appear (Form I-862), commencing these removal proceedings and charging the respondent with removability under section 237(a)(2)(C) of the Act.

## III. THE CONTINUOUS RESIDENCE REQUIREMENT

The sole issue before us is whether the respondent's commission of a firearms offense precludes him from satisfying the requirement in section 240A(a)(2) of the Act that he have "resided in the United States continuously for 7 years after having been admitted in any status."

The rule for calculating the period of continuous residence or continuous physical presence necessary to establish eligibility for cancellation of

---

[1]That provision is now designated as chapter 720, section 5/24-1(a)(7) of the Illinois Compiled Statutes, without substantive change.

removal under sections 240A(a) and (b) of the Act is set forth in section 240A(d)(1), often referred to as the "stop time" rule. *Matter of Mendoza-Sandino*, 22 I&N Dec. 3426 (BIA 2000); *Matter of Nolasco*, 22 I&N Dec. 3385 (BIA 1999). Section 240A(d)(1) provides, in its entirety, as follows:

> TERMINATION OF CONTINUOUS PERIOD.—For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 239(a) or when the alien has committed an offense *referred to in section 212(a)(2)* that renders the alien inadmissible to the United States under section 212(a)(2) or removable [(i.e., deportable)][2] from the United States under section 237(a)(2) or 237(a)(4), whichever is earliest. (Emphasis added.)

The issue that was raised before the Immigration Judge and argued in the initial briefs submitted on appeal concerned the appropriate date to apply in determining when accrual of continuous residence ends. We have since decided that issue in *Matter of Perez*, 22 I&N Dec. 689 (BIA 1999), where we held that continuous residence or physical presence terminates on the date that an offense specified in section 240A(d)(1) is *committed*.[3] Neither the parties nor the Immigration Judge addressed the threshold question whether a firearms offense is one of the crimes referred to in section 240A(d)(1) that will "stop time." We accordingly requested briefing on this issue, and both parties timely responded with thoughtful briefs.

## IV. THE PARTIES' POSITIONS

The respondent argues that Congress did not intend that the "stop time" rule apply to firearms offenses. He contends that section 240A(d)(1) "clearly states that an alien's offense, as a starting point, must be an offense *referred to in section 212(a)(2)*" before the "stop time" rule will apply. Accordingly, the respondent's position is that, under the plain language of

---

[2]Although section 240A generally uses the separate terms "inadmissible" in the context of section 212(a) of the Act and "deportable" in the context of section 237(a) of the Act, section 240A(d) uses the term "removable" rather than "deportable" in relation to section 237(a)(2). The term "removable" encompasses both section 212(a) grounds of inadmissibility and the section 237(a) grounds of deportability, and it may ordinarily be used in place of either term. *See* section 240(a)(2) of the Act, 8 U.S.C. § 1229a(a)(2) (Supp. II 1996). However, because of the nature of the particular question before us and for the sake of clarity, we will use the separate terms in our discussion. *See, e.g.,* sections 240A(a), (b)(1), (b)(2)(D), (c)(4) of the Act.

[3]The actual date that the respondent committed his firearms offense is not clear from the record. The conviction document establishes, however, that he was convicted of the offense prior to the time he attained 7 years of continuous residence. It necessarily follows that the offense was committed prior to that time.

the statute, firearms offenses do not cut off continuous residence because they are not "referred to" in section 212(a)(2) of the Act. The respondent reasons that Congress would not have twice referenced section 212(a)(2) in section 240A(d)(1) if it had intended that offenses included in either section 212(a)(2) or sections 237(a)(2) and (4) would stop the accrual of time. The respondent urges that in passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), which replaced the separate and distinct deportation and exclusion proceedings with uniform removal proceedings, Congress intended to eliminate many of the differences between those separate proceedings. By suggesting that an offense must first be "referred to in section 212(a)(2)," the respondent submits that Congress sought to create a "sense of parity between the two previously distinct proceedings by attempting to include in the rule offenses that were found in both sections of the statute."

The Service, on the other hand, argues that section 240A(d)(1) is ambiguous, but should be interpreted as providing for termination of continuous residence upon the commission of an offense included in any of the three specified statutory sections. According to the Service, the plain language of section 240A(d)(1) does not clearly support either its position or that of the respondent. In the Service's view, either interpretation relegates some of the language in the statute to surplusage. However, the Service maintains that its reading presumes a grammatical error, whereas the respondent's position leaves the references to sections 237(a)(2) and (4) without any effect. The Service contends that "[p]resumably, the drafters of section 240A(d)(1) would more likely make a grammatical error, than include a removal ground that would be totally ineffective in stopping accrual of time as a resident."

## V. ANALYSIS

There is no question that the respondent's offense rendered him deportable under one of the grounds referenced in section 240A(d)(1) of the Act. Specifically, he is deportable under section 237(a)(2)(C) on the basis of his firearms offense. Thus, he is deportable under one of the criminal grounds included within section 237(a)(2). However, the plain language of section 240A(d)(1) also states that, as a prerequisite, an offense must be "referred to in section 212(a)(2)" of the Act in order to stop accrual of time. *See INS v. Cardoza-Fonseca,* 480 U.S. 421, 432 n.12 (1987) (stating that there is a "strong presumption that Congress expresses its intent through the language it chooses"); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982) (presuming "that the legislative purpose is expressed by the ordinary meaning of the words used"); *Chevron, U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.,* 467 U.S. 837, 843 (1984) (holding that courts "must give effect to the unambiguously expressed intent of Congress"). The offenses included in section 237(a)(2)(C) of the Act are not referred to in section 212(a)(2) of the Act and are therefore not "stop time" offenses. *See* section 212(a)(2) of the Act.

The phrase "referred to in section 212(a)(2)" could not be more clear, and we will apply its plain meaning. We are unaware of any legislative history that would overcome the strong presumption that these words mean what they say. *Richards v. United States*, 369 U.S. 1, 10 (1962) (asserting that, notwithstanding the ease of application inherent in an alternative construction of a statute, the courts "are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction"). In section 240A(d)(1) of the Act, Congress enacted a rule that requires a determination that an offense is included in section 212(a)(2) before it will operate to cut off the accrual of time. *See Matter of Perez, supra*, at 693 (holding that a controlled substance offense that rendered the alien deportable under section 237(a)(2)(B) is an offense that is referred to in section 212(a)(2) of the Act and thus terminates continuous residence under section 240A(d)(1)).

The statute could easily have been drafted without the phrase "referred to in section 212(a)(2)," or it could have been written so that any offense in sections 212(a)(2), 237(a)(2), or 237(a)(4) would operate to cut off time, as the Service contends that Congress intended. But that is not what the statute says, and it would take far more than a simple grammatical correction to reach the meaning urged by the Service. Our task is not to improve on the statute or to question the wisdom of it, but rather to interpret the language that was enacted as law. *Richards v. United States, supra*.

It is important to note that several of the grounds of deportability found in section 237(a)(2) of the Act *are* referred to in section 212(a)(2) of the Act, whereas others, such as the ground set forth in section 237(a)(2)(C), are not. *Compare* section 212(a)(2) of the Act *with* section 237(a)(2) of the Act. By contrast, of course, all of the offenses listed in section 212(a)(2) are necessarily "referred to in section 212(a)(2)." Under the interpretation proposed by the Service, time would stop with the commission of any offense that renders the alien inadmissible under section 212(a)(2) or deportable under sections 237(a)(2) or (4). This reading would render the phrase "referred to in section 212(a)(2)" surplusage, because there would be no reason to distinguish between those offenses that constitute grounds of deportability under section 237(a)(2), but *not* grounds of inadmissibility under section 212(a)(2) (such as the respondent's firearms offense), and those that fall within both categories. *See Matter of Perez, supra*, at 699 (holding that provisions within statutes should not be interpreted in such a way as to render other provisions superfluous) (citing *Freytag v. Comm'r,* 501 U.S. 868, 877 (1991); *International Union, UAW v. Johnson Controls,*

*Inc.,* 499 U.S. 187, 201 (1991); *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990)). The Service's position writes the phrase "referred to in section 212(a)(2)" out of section 240A(d)(1), materially changing its meaning.

Another important rule of statutory construction is that, in ascertaining the "plain meaning" of the statute, the Board must consider both "the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988). Indeed, the paramount index of congressional intent is the plain meaning of the words used in the statute as a whole. *See INS v. Cardoza-Fonseca, supra*, at 431. Thus, in construing the language of section 240A(d)(1) of the Act, we must also consider the language in section 240A as a whole. *See Matter of Perez, supra*, at 694 (providing that if an ambiguity is perceived when one provision is read in isolation, it is often clarified when it is interpreted in the context of the statutory scheme as a whole) (citing *Bailey v. United States*, 516 U.S. 137, 146 (1995)).

We note that Congress referred to grounds of inadmissibility and deportability several times throughout section 240A of the Act. For instance, section 240A(b)(1)(C) refers to sections 212(a)(2), 237(a)(2), and 237(a)(3) of the Act, stating that nonpermanent residents who have been convicted of an offense under any of these provisions are ineligible for cancellation of removal. Similarly, in delineating special rules of eligibility for battered spouses or children, section 240A(b)(2)(D) specifically states that these rules apply only to aliens who are not inadmissible under sections 212(a)(2) or (3), or deportable under section 237(a)(1)(G) or sections 237(a)(2), (3), or (4) of the Act. The fact that, throughout section 240A, the statute lists specific—and different—grounds of inadmissibility under section 212(a) and grounds of deportability under section 237(a) supports our reading that, in section 240A(d)(1) of the Act, there is a meaningful distinction between those grounds of deportability under section 237(a) that are referred to in section 212(a)(2), and those that are not.

Nonetheless, we are cognizant that this interpretation of section 240A(d)(1) of the Act leaves the phrase "or 237(a)(4)" without any meaningful effect because *none* of the offenses listed in section 237(a)(4) of the Act are referred to in section 212(a)(2) of the Act. Rather, section 212(a)(3) of the Act includes the security and related offenses analogous to those in section 237(a)(4). *Compare* section 237(a)(4) of the Act *with* sections 212(a)(2), (3) of the Act. Normally, as noted above, we would not read a statutory provision in such a way as to render another provision superfluous. However, looking to other subsections within section 240A of the Act reveals that it is not the language of section 240A(d)(1) that renders the "or 237(a)(4)" language superfluous.

Section 240A(c) of the Act lists specific categories of aliens who are statutorily ineligible for cancellation of removal under sections 240A(a) and

(b)(1). Section 240A(c)(4) provides that an alien who is "deportable under of [sic] section 237(a)(4)" is ineligible for relief under sections 240A(a) or (b)(1). A similar bar applies to those aliens seeking cancellation of removal under the section 240A(b)(2) special rule for battered spouses and children. *See* section 240A(b)(2)(D) of the Act. Thus, under sections 240A(b)(2)(D) and 240A(c)(4), any alien who is deportable under section 237(a)(4) of the Act is categorically barred from a grant of cancellation of removal. Consequently, the inclusion of this ground of deportability within section 240A(d)(1) is merely an additional reference.

Simply put, it would be irrelevant whether a charge of deportability under section 237(a)(4) terminates an alien's period of continuous residence or physical presence because deportability under that charge automatically renders an alien statutorily ineligible for cancellation of removal pursuant to sections 240A(b)(2)(D) or (c)(4) of the Act. Thus, ignoring the duplicative reference to section 237(a)(4) in section 240A(d)(1) has no impact on section 240A as a whole, because the presence or absence of that language in section 240A(d)(1) has no effect on eligibility for cancellation of removal. However, ignoring the phrase "referred to in section 212(a)(2)" would materially alter the criteria for cancellation of removal. Mindful of our obligation to consider "the language and design of the statute as a whole," we will give effect to that phrase. *K Mart Corp. v. Cartier, Inc., supra*, at 291. According to the plain and ordinary meaning of that language, an offense must be "referred to in section 212(a)(2)" before it will operate to cut off accrual of time under section 240A(d)(1).

Accordingly, we find that because the respondent's firearms offense, which rendered him deportable under section 237(a)(2)(C) of the Act, is not referred to in section 212(a)(2) of the Act, it did not "stop time" under section 240A(d)(1). The respondent's period of continuous residence began when he was admitted as a temporary resident on May 4, 1988. *See Matter of Perez, supra,* at 692. The Notice to Appear was not served until more than 7 years later. *See* section 240A(d)(1) of the Act. Therefore, the respondent has satisfied the continuous residence requirement of section 240A(a)(2). We will accordingly sustain the respondent's appeal and remand the record to the Immigration Judge for a hearing on the merits of the respondent's application for cancellation of removal.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The Immigration Judge's order of February 12, 1998, is vacated, and the record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion.

*CONCURRING OPINION:* Edward R. Grant, Board Member

I respectfully concur.
There is much to agree with in the dissenting opinion of Board Member

Cole. It seems unlikely that Congress, in the course of enacting a statute that merged the formerly separate exclusion and deportation proceedings into a single form of removal proceedings and otherwise sought to streamline and make consistent the process of immigration adjudications, would create an eligibility rule for discretionary relief that draws an apparently arbitrary distinction between various forms of criminal offenses. The result in this case is particularly ironic—that the commission of a firearms offense does not stop the accrual of time-in-residence necessary to establish eligibility for the relief of cancellation of removal under section 240A(a) of the Immigration and Nationality Act, 8 U.S.C. § 1229b(a) (Supp. II 1996). This is so because in fashioning the overall eligibility rules for section 240A(a) cancellation, which is the successor to relief under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994), Congress did not carry over the rule disallowing waiver of offenses that are grounds of inadmissibility under section 212(a) of the Act but have no analogue in the grounds of deportability under section 237(a) of the Act, 8 U.S.C. § 1227(a) (Supp. II 1996) (formerly section 241(a) of the Act, 8 U.S.C. § 1251(a) (1994)). *See Matter of Gabryelsky*, 20 I&N Dec. 750, 753-54 (BIA 1993). Thus, Congress plainly accorded eligibility for cancellation of removal to a category of offenders—chiefly those with firearms convictions—who formerly were ineligible for section 212(c) waivers. That Congress would have further intended to treat such offenders *more* generously than those convicted of crimes "referred to in section 212(a)(2)" of the Act, 8 U.S.C. § 1182(a)(2) (1994 & Supp. II 1996), does seem improbable.

However, as tempting as it is to correct this anomaly, to do so would cross the line into revision of the statute. The result to which the ambiguous statutory language points may be strange. But this is insufficient to warrant resolving the ambiguity by reading a clause out of the statute—which the dissenting opinion does to the phrase "referred to in section 212(a)(2)." In all likelihood, the unclear drafting of section 240A(d)(1) represents a technical error that Congress is free to correct in subsequent legislation. I would wait for Congress to so act and, in the meantime, join the decision of the majority.

*DISSENTING OPINION:* Patricia A. Cole, Board Member, in which Michael J. Heilman and Philemina McNeill Jones, Board Members, joined

I respectfully dissent. I disagree that a "plain reading" of the language at issue supports the majority's conclusion that an alien who is deportable under section 237(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(C) (Supp. II 1996), continues to accrue continuous residence after the date that the underlying firearms offense was committed.

The language of section 240A(d)(1) of the Act, 8 U.S.C. § 1229b(d)(1) (Supp. II 1996), that we are charged with interpreting states that continuous

residence or physical presence ends "when the alien has committed an offense referred to in section 212(a)(2) that renders the alien inadmissible to the United States under section 212(a)(2) or removable [(i.e., deportable)] from the United States under section 237(a)(2) or 237(a)(4)."

If the meaning of this statutory language were clear on its face, no further inquiry would be necessary. Unfortunately, the language is not clear. The phrase "referred to in section 212(a)(2)" of the Act, 8 U.S.C. § 1182(a)(2) (1994 & Supp. II 1996), and the inclusion of section 237(a)(4) offenses in the "stop time" rule cannot be reconciled because, as the majority points out, none of the security and related grounds offenses included in section 237(a)(4) are "referred to in section 212(a)(2)," yet they are explicitly included in section 240A(d)(1) as "stop time" offenses.

The Supreme Court has observed that "words are inexact tools at best," and it is often necessary to place the words of a statute in their proper context to discern their meaning. *Harrison v. Northern Trust Co.,* 317 U.S. 476, 479 (1943). When the plain language is unclear, our task is to offer a reasonable interpretation that gives effect to congressional intent. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837, 842-43 (1984).

As a preliminary matter, I agree with the majority that section 212(a)(2) of the Act does not include a reference to firearms convictions. Thus, unless a particular firearms offense would also qualify as one of the specifically designated section 212(a)(2) offenses,[1] I would not consider it to be "referred to in section 212(a)(2)."

However, section 240A(d)(1) also includes section 237(a)(4) offenses. These security-related offenses are not "referred to in section 212(a)(2)." Thus, the majority's interpretation that an offense must, as a preliminary matter, be included in section 212(a)(2) does not offer a way to read the "referred to in section 212(a)(2)" language in harmony with the reference to section 237(a)(4). The majority seems to gloss over the fact that the statute, as presently drafted, does not offer a plain meaning. Instead, it leaves the choice of ignoring either the "referred to in section 212(a)(2)" language or the section 237(a)(4) reference.

In my view, the inclusion of the section 237(a)(4) offenses in the "stop

---

[1] For example, a theft or robbery offense with an element specifying that it was committed with a firearm would be included in the section 212(a)(2)(A)(i)(I) ground of inadmissibility (crimes involving moral turpitude). Likewise, crimes that are included in section 212(a)(2)(A)(i)(II) (controlled substance violations) may also include a firearms offense, and an offense under section 212(a)(2)(B) (two or more criminal offenses for which the aggregate sentence is 5 years or more of confinement) can include firearms offenses, as the only restriction on the type of crime included in section 212(a)(2)(B) is that it not be a purely political offense. The Service has not argued that the respondent's firearms offense would be included in these, or any other, criminal grounds in section 212(a)(2) of the Act.

time" rule cuts against reading the statute to require that even those aliens who are rendered deportable by the commission of a section 237(a)(2) or (4) offense must, before the offense will be considered a "stop time" offense, have their offense evaluated and determined to fall under a comparable section 212(a)(2) ground of inadmissibility. While many, if not most, of the section 237(a)(2) offenses would meet that test, none of the section 237(a)(4) offenses would, leaving the reference to section 237(a)(4) without meaning under the majority's interpretation.

I am aware that the statute provides that cancellation of removal under sections 240A(a) and (b)(1) does not apply to an alien who is "deportable under section 237(a)(4)." Section 240A(c)(4) of the Act. Deportability under section 237(a)(4) also bars relief under the special rule in section 240A(b)(2) relating to battered spouses and children. Section 240A(b)(2)(d). This seemingly makes redundant the reference to section 237(a)(4) offenses in the "stop time" rule, since there would be no need to reach the issue of continuous residence or physical presence for an alien deportable on these grounds. However, "[r]edundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (citation omitted).

Why Congress structured the provision as it did is unknown. The legislative history suggests that, at some point in its drafting, section 240A(d)(1) was intended to also serve as the rule for calculating the period of time required for relief under section 212(h) of the Act, 8 U.S.C. § 1182(h) (1994 & Supp. II 1996), although there is no reflection of that intent in the final version of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"). *See* 142 Cong. Rec. H10,841, H10,900 (1996). Congress did, however, expressly make the rule apply for calculating the period of physical presence required for suspension of deportation under former section 244(a) of the Act, 8 U.S.C. § 1254(a) (1994), except for certain exempted classes of aliens. *See Matter of Nolasco*, 22 I&N Dec. 632 (1999); IIRIRA § 309(c)(5), 110 Stat. at 3009-627. And deportability on a security ground does not statutorily preclude section 244(a)(2) suspension of deportation. The reference to section 237(a)(4) (formerly section 241(a)(4) of the Act, 8 U.S.C. § 1251(a)(4) (1994)), may therefore not be a redundancy when applied in the context of section 244(a)(2) suspension cases. In any event, the section 237(a)(4) language is there, and I believe that giving it meaningful effect in the section 240A(d)(1) rule would best preserve the overall legislative intent and the structure of the cancellation of removal statute.

Section 240A(a) cancellation of removal is the replacement form of relief for the repealed relief previously available under former section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994). *See* H.R. Rep. No. 104-469

(1996). Although there is sparse legislative history directly addressing the question before us, what little I have found suggests that Congress was responding to concerns that, under former section 212(c), aliens had been allowed to accrue continuous residence while being punished for the very criminal act that was the basis of their deportation. *See* S. Rep. No. 104-48, at 47 (1995). The inclusion in the final bill of the section 240A(d)(1) measure cutting off time as of the date an alien commits the offense that renders him or her inadmissible or deportable directly addresses those concerns. I have found nothing in the legislative history to suggest that Congress required that a deportable offense be comparable to one of those enumerated in section 212(a)(2) in order for it to stop the accrual of time. To the contrary, I interpret Congress's specific reference to deportable offenses in the rule as an attempt to clarify that both deportable and inadmissible offenses qualify to stop time.

To the extent that the very brief comment pertinent to section 240A(d)(1) in the Joint Explanatory Statement of the Committee of Conference on H.R. 2202 sheds light on Congress's intent to include all of the section 237(a)(2) deportable offenses, I observe that it states the following:

> Section 240A(d) provides that the period of continuous residence or physical presence ends when an alien is served a notice to appear under section 239(a) (for the commencement of removal proceedings under section 240), or when the alien is convicted of an offense that renders the alien *deportable* from the United States, whichever is earliest.

H.R. Conf. Rep. No. 104-828, at 214 (1996) (emphasis added). This report does not even reference inadmissible offenses, and I simply find nothing here that suggests that a deportable offense must also have a comparable ground of inadmissibility. There is no mention in the report of the phrase "referred to in section 212(a)(2)" on which the majority has placed primary emphasis in interpreting the statute.

Furthermore, when Congress previously enacted a provision restricting both inadmissible and deportable aliens from establishing eligibility for relief based solely on section 212(a)(2) offenses, it was clear in stating its intention. Section 101(f)(3) of the Act, 8 U.S.C. § 1101(f)(3) (Supp. II 1996), provides that an alien cannot establish good moral character for the required period if he or she is "a member of one or more of the classes of persons, *whether inadmissible or not, described in* [certain specified] *paragraphs . . . of section 212(a) of this Act . . .* if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period." (Emphasis added.) Even though that statute has perhaps most commonly been applied when determining eligibility for relief from deportation rather than exclusion, section 101(f)(3) is clear in precluding relief by statute only when the criminal offense is one described in section 212(a). *See, e.g.,* former sections 244(a), (e) of the Act.

1299

Congress did not follow that approach here. Rather, section 240A(d)(1) specifically refers to both deportable and inadmissible offenses. Had Congress meant to limit the "stop time" rule to section 212(a)(2) offenses, there would have been no need to go beyond the "referred to in section 212(a)(2)" language. The references to sections 237(a)(2) and (4) would be rendered surplusage.

The statute we are construing here is markedly different from the amendment to former section 212(c) that we addressed in *Matter of Fuentos-Campos*, 21 I&N Dec. 905 (BIA 1997). *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(d) 110 Stat. 1214, 1217 ("AEDPA"), *amended by* IIRIRA § 306(d), 110 Stat. at 3009-612. In *Fuentos-Campos*, we found that the failure of the AEDPA to make any reference to excludability or inadmissibility in the amendments restricting relief under section 212(c) of the Act meant that inadmissible aliens were not subject to those restrictions.[2] By way of contrast, section 240A(d)(1) specifically refers to both offenses that render an alien "inadmissible . . . under section 212(a)(2) or removable [(i.e., deportable)] . . . under section 237(a)(2) or 237(a)(4)."

Finally, it is noteworthy that the AEDPA amendments to former section 212(c), replaced by section 240A(a) cancellation of removal, categorically barred from relief aliens who are deportable for a firearms conviction. Absent clear and persuasive evidence that Congress so intended, I would not interpret section 240A(d)(1) as providing that same class of aliens favored status when calculating the time requirements for cancellation of removal.

I interpret section 240A(d)(1) as providing that when an alien has committed an offense that renders him or her inadmissible under section 212(a)(2) or deportable under sections 237(a)(2) or (4), that offense will stop time from accruing for purposes of any form of relief to which section 240A(d)(1) applies. Because the respondent's firearms offense indisputably rendered him deportable under section 237(a)(2) of the Act and was committed before he had acquired 7 years of continuous residence, he is ineligible for section 240A(a) cancellation of removal. I would dismiss the appeal.

---

[2]The AEDPA amendment, as further amended by the IIRIRA, provided that "an alien who is *deportable* by reason of having committed any criminal offense covered in *section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii)* for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section *241(a)(2)(A)(i)*" is barred from section 212(c) relief. AEDPA § 440(d), *amended by* IIRIRA § 306(d) (emphasis added).