NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3649
_____

VICTOR VIKTOROVICH SHNEGELBERGER,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency No. A087-297-628)
Immigration Judge: Hon. Kuyomars Golparvar
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 9, 2018
_____

Before: SHWARTZ, NYGAARD, and RENDELL, Circuit Judges.

(Opinion Filed:  August 6, 2018)
_____

OPINION*
_____

SHWARTZ, Circuit Judge.

    Viktor Shnegelberger petitions for review of an order of the Board of Immigration

_____
    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

Appeals ("BIA") denying his application for cancellation of removal, withholding of removal, asylum, and relief under the United Nations Convention Against Torture ("CAT"). Because Shnegelberger's argument for cancellation of removal is foreclosed by precedent, and we lack jurisdiction over the BIA's factfinding regarding the other forms of relief he seeks, we will deny the petition in part and dismiss it in part.

I

Shnegelberger is a citizen of Tajikistan. He entered the United States in December 2007 as a sixteen-year-old, on a visitor's B-2 visa, and became a lawful permanent resident in June 2008 based on his mother's marriage to a U.S. citizen. He last visited Tajikistan in the summer of 2009 for a wedding. In January 2010, Shnegelberger was arrested for possession of marijuana and drug paraphernalia and thereafter pleaded guilty to violating 35 Pa. Stat. §§ 780-113(a)(31) and (32). In April 2015, he committed additional drug-related offenses and subsequently pleaded guilty to violating 35 Pa. Stat. § 780-113(a)(16) and 75 Pa. Stat. § 3802(d)(3). As a result, the Department of Homeland Security initiated removal proceedings, and Shnegelberger sought cancellation of removal for lawful permanent residents, withholding of removal, and asylum, under 8 U.S.C. §§ 1229b(a), 1231(b)(3), and 1158(b), respectively, and CAT relief.

In support of his requests for relief, Shnegelberger testified before the Immigration Judge ("IJ") that when he was a child in Tajikistan, he was bullied because he is a light-skinned Christian of Russian and German ethnicity, whereas most of the population consisted of darker-skinned Muslims. In one incident, he was beaten by multiple children, which resulted in Shnegelberger breaking his hand and tooth. He was also

threatened and taunted for not being circumcised and ultimately proceeded with circumcision at the age of eleven. His mother also testified about his mistreatment, and his stepfather testified about Shnegelberger's close relationship with his mother. In addition, an expert testified that Shnegelberger is part of the ethnic and religious minority in Tajikistan and that the country has serious problems with religious and ethnic discrimination. Shnegelberger asserts that he was persecuted on the basis of his ethnicity, religion, and membership in a particular social group of "light-haired, fair-skinned, blue/green-eyed Christians of German or Russian descent." A.R. 778, 800.

The IJ denied all of Shnegelberger's requested relief. The IJ determined that Shnegelberger's 2010 marijuana conviction occurred before he accrued the seven years of continuous residence required for a legal permanent resident to be eligible for cancellation of removal under 8 U.S.C. § 1229b(a)(2) but noted that if Shnegelberger had been statutorily eligible, the IJ would have favorably exercised his discretion to grant cancellation of removal. However, the IJ found that Shnegelberger's mistreatment in Tajikistan did not rise to the level of past persecution, Shnegelberger did not demonstrate a well-founded fear of future persecution on account of his ethnicity or religion or establish that his proposed social group was socially distinct as required for a cognizable particular social group, and thus, he was not entitled to asylum or withholding of removal. The IJ also denied Shnegelberger CAT relief because the evidence failed to show a likelihood that he would be tortured if removed to Tajikistan.

The BIA dismissed Shnegelberger's appeal, agreeing with the IJ that Shnegelberger was ineligible for cancellation of removal because his 2010 marijuana

3

offense disrupted his seven years of continuous residency in the United States. The BIA also held that: (1) the IJ properly considered all of the evidence in the aggregate when it determined that Shnegelberger did not establish past persecution or a well-founded fear of future persecution on the basis of ethnicity or religion; (2) the IJ correctly concluded that Shnegelberger's proposed social group lacked social distinction; and (3) the IJ did not err in ruling that Shnegelberger failed to establish that he would more likely than not be tortured if returned to Tajikistan. Shnegelberger appeals.

II[1]

When the BIA issues its own opinion on the merits, we review the BIA's decision, not that of the IJ. Mahn v. Att'y Gen., 767 F.3d 170, 173 (3d Cir. 2014). However, where, as here, the BIA expressly adopts portions of the IJ opinion, we review both the IJ and BIA decision. Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). Under 8 U.S.C. § 1252(a)(2)(C), we lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or . . . [1227(a)(2)](B)," except that we may review "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D). Under this standard, "we are limited to pure questions of law, and to issues of application of law to fact, where the facts are undisputed and not the subject of challenge." Kamara v. Att'y Gen., 420 F.3d 202, 211 (3d Cir. 2005) (citations and internal quotation marks omitted). We review the

---

[1] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

BIA's legal determinations de novo. Martinez v. Att'y Gen., 693 F.3d 408, 411 (3d Cir. 2012).

III

A

We will first address Shnegelberger's argument that the BIA erred in interpreting the cancellation of removal statute's stop-time rule in § 1229b(d)(1) in a manner that precludes him from qualifying for cancellation of removal under § 1229b(a). The interpretation of the stop-time rule is a question of law over which we have jurisdiction. Rachak v. Att'y Gen., 734 F.3d 214, 216 (3d Cir. 2013).

Section 1229b(a) allows the Attorney General to cancel removal of "an alien who is inadmissible or deportable" if the alien meets certain requirements, including continuous residence in the United States for seven years after having been admitted. 8 U.S.C. § 1229b(a). However, under the stop-time rule, "any period of continuous residence . . . in the United States shall be deemed to end . . . when the alien has committed an offense referred to in section 1182(a)(2) . . . that renders the alien inadmissible to the United States under section 1182(a)(2) . . . or removable from the United States under section 1227(a)(2) . . . ." Id. § 1229b(d)(1). Thus, the stop-time rule involves two requirements. First, the alien's offense must be one that is "referred to in [§ 1182]" and second, the offense must then "render[] the alien inadmissible . . . under section [1182] or removable . . . under section [1227(a)(2)]." Matter of Garcia, 25 I. & N. Dec. 332, 334 (B.I.A. 2010) (quoting 8 U.S.C. § 1229b(d)(1)); see In re Campos-Torres, 22 I. & N. Dec. 1289, 1292-93 (B.I.A. 2000) (giving independent effect to the

5

"referred to in [§ 1182]" requirement).  Section 1227(a)(2)(B)(i) makes deportable "[a]ny alien who at any time after admission has been convicted of a violation of . . . any [state or federal law] relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less or marijuana."  8 U.S.C. § 1227(a)(2)(B)(i).  In other words, § 1227(a)(2) makes aliens convicted of controlled substance offenses removable, subject to an exception for possession of 30 grams or less of marijuana.  Section 1182(a)(2)(A)(i)(II) mirrors § 1227(a)(2) and renders inadmissible "any alien convicted of, or who admits having committed . . . a violation of . . . any [state or federal law] relating to a controlled substance."  Id. § 1182(a)(2)(A)(i)(II).  However, unlike § 1227(a)(2), § 1182(a)(2)(A)(i)(II) does not contain an exception for possession of 30 grams or less of marijuana.

Shnegelberger concedes that his 2010 marijuana conviction is one that is "referred to in [§ 1182]" because it is a controlled substance offense under § 1182(a)(2)(A)(i)(II), but disputes whether it bars him from cancellation of removal.  He argues that the stop-time rule's use of the disjunctive "or" in its reference to the alien's commission of an offense that renders him "inadmissible . . . under section 1182(a)(2) . . . or removable . . . under section 1227(a)(2)," 8 U.S.C. § 1229b(d)(1), should be construed as a conjunctive "and," meaning that the offense would need to render him both inadmissible and removable.  Our precedent, however, forecloses this interpretation.  In Rachak, the petitioner—like Shnegelberger—was a lawful permanent resident who had a conviction for marijuana possession prior to accruing the requisite seven years of continuous residency necessary to be eligible for cancellation of removal under § 1229b(a)(2).  734

6

F.3d at 215-16. In interpreting the stop-time rule, we stated that the provision "terminates the accrual of the period of residence when the alien 'has committed an offense' that renders him either inadmissible or removable." Id. at 218 (quoting § 1229b(d)(1)). Noting that the petitioner's marijuana offense did not render him removable but did make him inadmissible under § 1182(a)(2)(A)(i)(II) because it was a controlled substance offense, we agreed with the BIA that the petitioner did not qualify for cancellation of removal since application of the stop-time rule meant he had not attained the required seven years of continuous residency. Id.

Rachak controls here and precludes Shnegelberger from eligibility for cancellation of removal. Although his 2010 marijuana offense does not render him removable, due to the 30 gram exception, 8 U.S.C. § 1227(a)(2)(B)(i), it does render him inadmissible under § 1182(a)(2)(A)(i)(II), and thus, the stop-time rule terminates his accrual of continuous residency at the time he committed the marijuana offense. See In re Jurado-Delgado, 24 I. & N. Dec. 29, 32 (B.I.A. 2006). Because Shnegelberger committed his marijuana offense in January 2010, before he reached seven years of continuous residency after having entered the United States in December 2007,[2] the BIA correctly concluded that Shnegelberger is ineligible for cancellation of removal.

---

[2] See Holder v. Martinez Gutierrez, 566 U.S. 583, 587 n.1, 593 (2012) (stating that the seven-year continuous residency requirement of § 1229b(a)(2) includes time preceding the acquisition of lawful permanent resident status and observing that "admission" refers to the lawful entry of an alien to the United States under § 1101(a)(13)(A)).

B

We lack jurisdiction to consider Shnegelberger's challenges to the BIA's

determinations that he had not established various facts necessary to obtain asylum,

withholding of removal, or CAT relief. Specifically, he contends the BIA and IJ erred in

concluding that his mistreatment in Tajikistan did not rise to the level of past persecution,

that he has not established a well-founded fear of future persecution on the basis of

ethnicity and religion, that his proposed social group of lacks social distinction, and that

he has not shown a likelihood of torture if he is returned to Tajikistan.

Whether an asylum or withholding of removal applicant has established past

persecution or a well-founded fear of future persecution are factual determinations.

Jarbough v. Att'y Gen., 483 F.3d 184, 191 (3d Cir. 2007); Voci v. Gonzales, 409 F.3d

607, 613 (3d Cir. 2005); Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005).[3] We thus

---

[3] Shnegelberger asserts that we have jurisdiction to review his claims because under Huang v. Att'y Gen., 620 F.3d 372 (3d Cir. 2010), while questions as to what may happen to an alien if he returns to his home country are factual, whether that conduct meets the definition of persecution is legal. To the extent Huang conflicts with Jarbough, Voci, and Li, those earlier cases govern the factual nature of the past persecution and well-founded fear of persecution inquiry. See Pardini v. Allegheny Intermediate Unit, 524 F.3d 419, 426 (3d Cir. 2008).

Even if Huang governs, we would still agree with the BIA's conclusion that Shnegelberger did not establish mistreatment rising to the level of past persecution or a well-founded fear of future persecution on the basis of ethnicity or religion. See Wong v. Att'y Gen., 539 F.3d 225, 236 (3d Cir. 2008) (explaining that "harassment and discrimination do not constitute persecution" and finding no objectively reasonable fear of persecution), abrogated on other grounds by Nbaye v. Att'y Gen., 665 F.3d 57 (3d Cir. 2011); Jarbough, 483 F.3d at 191 ("Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution."); Voci, 409 F.3d at 615 ("[O]ur cases suggest that isolated incidents that do not result in serious injury do not rise to the level of persecution."). Shnegelberger's circumstances are distinguishable from In re O-Z & I-Z, 22 I. & N. Dec. 23 (B.I.A. 1998), upon which he relies, because the misconduct

8

lack jurisdiction to review the BIA's determinations concerning past persecution and a well-founded fear of future persecution. Similarly, whether a proposed social group is socially distinct is a factual determination. See Perez-Rabanales v. Sessions, 881 F.3d 61, 65-66 (1st Cir. 2018); Reyes v. Lynch, 842 F.3d 1125, 1138 (9th Cir. 2016), cert. denied sub nom. Reyes v. Sessions, 138 S. Ct. 736 (2018); Zaldana Menijar v. Lynch, 812 F.3d 491, 500 (6th Cir. 2015). Therefore, we also lack jurisdiction to review the BIA's conclusion that Shnegelberger's proposed social group of "light-haired, fair-skinned, blue/green-eyed Christians of German or Russian descent" lacks the social distinction necessary for a cognizable particular social group.

Lastly, the BIA adopted the IJ's determination that there was insufficient evidence to suggest that Shnegelberger would more likely than not be tortured if removed to Tajikistan. The IJ specifically found that Shnegelberger's situation was distinguishable from the circumstances of other individuals described by Shnegelberger's expert, who

---

in that case, which involved repeated beatings that resulted in a rib injury and required stitches to the petitioner's face, id. at 24, the beating of the petitioner's son and a separate incident where his son was "dragged" and beaten by classmates, who also "cornered" him in the bathroom and forced him to undress to show that he had been circumcised, id., was far more severe than the reprehensible conduct Shnegelberger experienced.

Furthermore, the BIA's conclusion that there was insufficient evidence to support a well-founded fear of future persecution is correct. While Shnegelberger's expert stated that Department of State reports on Tajikistan underreported instances of religious persecution, he could not provide a basis for this view other than his anecdotal experience. Finally, to the extent Shnegelberger complains that the IJ or BIA "incorrectly weighed evidence [or] failed to consider evidence," we lack jurisdiction to review such claims because they "are not questions of law under § 1252(a)(2)(D)." Jarbough, 483 F.3d at 189; see also Green v. Att'y Gen., 694 F.3d 503, 508 (3d Cir. 2012) (stating that we lack jurisdiction to consider arguments that the IJ incorrectly weighed evidence in making factual determinations).

had been detained, interrogated, and beaten, and that the likelihood of torture was "heavily undermined" by the fact that Shnegelberger returned to Tajikistan in 2009 without incident. These are factual findings that we lack jurisdiction to review. See Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017) (explaining that the determination of "what is likely to happen to the petitioner if removed," for purposes of assessing the likelihood of torture, is a factual question).

IV

For the foregoing reasons, we will deny in part and dismiss in part Shnegelberger's petition.

10